UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

CYPRESS PHARMACEUTICAL, INC. PLAINTIFF

VS. CIVIL ACTION NO. 3:07CV108TSL-JCS

TIBER LABORATORIES, LLC. DEFENDANT

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Tiber Laboratories, LLC to dismiss pursuant to Rule 12(b)(2) and (3) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and improper venue, or alternatively, to transfer pursuant to 28 U.S.C. § 1404(a). Plaintiff Cypress Pharmaceutical, Inc. has responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that it lacks personal jurisdiction over Tiber. Consequently, the case will be transferred to the United States District Court for the Northern District of Georgia.

Plaintiff Cypress Pharmaceutical, Inc. (Cypress), a Mississippi corporation with its principal place of business in Madison, Mississippi, is a specialty pharmaceutical company engaged in the business of developing, marketing and distributing generic prescriptions and over-the-counter pharmaceutical products. Among the products developed and sold by Cypress is Hydro-DP, a prescription cold medicine manufactured for Cypress by

Great Southern Laboratories in Houston, Texas. On February 6, 2007, counsel for defendant Tiber Laboratories, LLC (Tiber) wrote to Cypress advising that Tiber had recently acquired Patent No. 6,979,689 ('689) from PediaMed Pharmaceuticals, Inc.; asserting that Endal HD syrup, a cough medicine previously marketed throughout the United States by PediaMed, was covered by patent '689; advising that Tiber intended to reintroduce Endal; and expressing a desire to "discuss our exclusive rights to products covered by the '689 patent and your product Hydro-DP and other related products." The parties had discussions over the next couple of weeks, during which Tiber took the position that Cypress's Hydro-SP syrup product infringed Tiber's '689 patent and proposed a possible license arrangement. Cypress maintains that it not only found the terms offered by Tiber unacceptable and rejected the proposal, but specifically questioned the validity of the '689 patent. Ultimately, on either February 19 or 20, Tiber's president informed Cypress that it would file suit if the parties could not agree to enter a licensee agreement and Cypress did not immediately cease its infringing activities.[1]

---

[1] Cypress's president, Max Draughn, states in his affidavit that on February 19, Tiber threatened to sue Cypress for infringement if Cypress did not agree to enter into a license agreement. Tiber asserts that it is "unaware of having made such a threat on February 19," although Tiber did "warn Cypress on February 20 it would sue for infringement if Cypress did not immediately cease its infringing activities."

Cypress filed the present declaratory judgment action against Tiber on February 20, seeking a declaration that it has not infringed any valid claims of the '689 patent, it has not actively induced others to infringe the '689 patent, and the claims of the '689 patent are invalid. The following day, February 21, Tiber, at the time unaware of Cypress's suit, filed its own suit against Cypress and Great Southern in the Northern District of Georgia for infringement of the '689 patent, and sought a temporary restraining order. Cypress promptly moved to dismiss the Georgia action based on the first-filed rule, and Tiber moved to dismiss, transfer or stay this action, contending, first, that this court lacks personal jurisdiction over Tiber, but arguing alternatively, that the case be transferred to Georgia, a more convenient forum, and that the first-filed rule ought not be applied in this case, given the circumstances in which Cypress filed this suit (i.e, having "raced to the courthouse in anticipation of an imminent suit by Tiber"). By memorandum opinion and order dated May 11, 2007, the Georgia District Court transferred the Tiber suit to this court, citing the well-established rule that where it has been determined that there is substantial overlap, "'the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed.'" Cadle Co. v. Whataburger of Alice, Inc., 174 F.3d 599, 606 (5th Cir. 1999) (citation omitted);

id. at 606 ("[o]nce the likelihood of a substantial overlap between the two suits ha[s] been demonstrated, it [is] was no longer up to the [second filed court] to resolve the question of whether both should be allowed to proceed.'"). See Tiber Laboratories, LLC v. Cypress Pharmaceuticals, Inc., Civil Action No. 2:07-CV-0014-RWS (N.D. Ga. May 11, 2007). The Tiber case, assigned Civil Action No. 3:07CV299, has since been consolidated with this case by agreed order dated July 3, 2007.[2]

In patent infringement actions, personal jurisdiction is governed by Federal Circuit law. Silent Drive, Inc. v. Strong Indus., 326 F.3d 1194 (Fed. Cir. 2003). Under Federal Circuit precedent, a district court may properly exercise personal jurisdiction over a non-consenting out-of-state defendant if a two-step inquiry is satisfied: "First, the party must be amenable to service of process under the appropriate state long-arm

[2] The court has recently been informed that a separate action was filed by Tiber in the Northern District of Georgia against Hawthorn Pharmaceuticals, Inc., alleging that Hawthorn is infringing the '689 patent. Tiber Laboratories, LLC v. Hawthorn Pharmaceuticals, Inc., 2:07-CV-0069-RWS. Hawthorn sells a product, DYTAN-HC, which Tiber alleges infringes the '689 patent. Hawthorn, asserting that it is a wholly-owned subsidiary of Cypress and that its DYTAN-HC is a similar product to Cypress's Hydro-DC, moved to transfer that case to this court. In an order dated June 29, Judge Story elected to stay the case pending this court's ruling on Tiber's motion to dismiss, transfer or stay, observing that while a transfer would be appropriate under the first-filed rule, it would be more efficient to simply stay the case, given that the issue has already briefed here.

statute. Second, the culmination of the party's activities within the forum state must satisfy the minimum contacts requirement of the due process clause." Hildebrand v. Steck Mfg. Co., Inc., 279 F.3d 1351, 1354 (Fed. Cir. 2002) (citations omitted).[3]

Under Mississippi's long-arm statute, courts of this state may exercise personal jurisdiction over a nonresident defendant if the defendant has entered a contract with a Mississippi resident to be performed in Mississippi, or has committed a tort in Mississippi, or is conducting business in Mississippi.[4] Cypress does not contend that Tiber has committed a tort in Mississippi or entered a contract with a resident to be performed here. Instead,

---

[3] As Mississippi's long-arm statute is not coextensive with due process, each prong must be addressed separately. Stripling v. Jordan Production Co., LLC, 234 F.3d 863, 869 n.7 (5th Cir. 2000).

[4] Mississippi's long-arm statute provides:

> Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state. Service of summons and process upon the defendant shall be had or made as is provided by the Mississippi Rules of Civil Procedure.

Miss. Code Ann. § 13-3-57.

it relies exclusively on the "doing business" prong of the long arm statute in support of its assertion of jurisdiction.

The general requirements for jurisdiction under the "doing business prong" of the Mississippi long-arm statute are that: "(1) the nonresident . . . must purposefully do some act or consummate a transaction in Mississippi; (2) the cause of action must either arise from or be connected with the act or transaction; and (3) the assumption of jurisdiction by Mississippi must not offend traditional notions of fair play and substantial justice." Internet Doorway, Inc. v. Parks, 138 F. Supp. 2d 773, 775 (S.D. Miss. 2001) (citing Gross v. Chevrolet Country, Inc., 655 So. 2d 873, 877 (Miss. 1995)). Under the statute, one is "deemed to be doing business" if he "perform [s] any character of work or service in this state." Miss. Code Ann. § 13-3-57. See Coats v. Penrod Drilling Corp., 5 F.3d 877, 882 (5th Cir. 1993). The Mississippi Supreme Court has further defined the term to include doing "various acts here for the purpose of realizing a pecuniary benefit or otherwise accomplishing an object." Coats, 5 F.3d at 882 (citing McDaniel v. Ritter, 556 So. 2d 303, 309 (Miss. 1989)).

The due process inquiry involves a three-prong test, which asks whether: "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal

jurisdiction is reasonable and fair." Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc., 444 F.3d 1356, 1363 (Fed. Cir. 2006). "With respect to the last prong, the burden of proof is on the defendant, which must 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable' under the five-factor test articulated by the Supreme Court in Burger King." Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-77, 105 S. Ct. 2174 (1985)).

In support of its motion, Tiber has submitted the affidavit of its president, Richard Gorman, who attests that Tiber does not maintain any offices, or own or lease any property in Mississippi; it has no employees in Mississippi; it does not maintain any bank or brokerage accounts here; and it does not otherwise "engage in any conduct of the sort that might make it reasonable to expect to be haled into court" in Mississippi. Gorman declares, moreover, that the Tiber product that is protected by the '689 patent (Endal) has not been sold in Mississippi at any time, and was not sold anywhere by Tiber before March 13, 2007. Finally, he states that Tiber has not sold any other product for delivery in Mississippi and to the best of his knowledge, no other product sold or distributed by Tiber was being sold in Mississippi on or before February 20, 2007, the date on which this suit was filed.

For its part, Cypress does not allege that Tiber has any actual presence in this state. Furthermore, it does not contend that Tiber has sold any products in Mississippi, or that any Tiber products have been sold in Mississippi. In fact, Cypress does not assert that Tiber has conducted any sales activity in Mississippi to date or that it has conducted sales activity outside the state that has resulted in solicitation of orders in Mississippi or actual sales to Mississippi customers. Rather, Cypress suggests that Tiber may have taken actions outside of Mississippi (or be planning to take actions outside of Mississippi) that may eventually result in sales of Tiber's Endal product in Mississippi. Specifically, Cypress points out that when PediaMed owned the '689 patent, PediaMed sold Endal, the product Tiber alleges is covered by the '689 patent, throughout the United States, including in Mississippi. Cypress reasons that since Tiber has announced that it intends to "reintroduce" Endal, then it presumably also plans to sell Endal nationwide, including in Mississippi, and that based on these contacts with Mississippi, Tiber qualifies as "doing business" in Mississippi and should reasonably anticipate being haled into court in this forum. The court cannot agree.

It may be true, as Cypress notes, that "<u>if</u> Tiber, in fact, carries through on its stated plan to fully reintroduce Endal into the United States market, Tiber inevitably will sell the [Endal]

product in Mississippi." (Emphasis added). Yet merely having plans to eventually sell a product in the forum state, or having plans to place a product in the stream of commerce so that it might at some future time be sold in the forum state, does not qualify as doing business in the forum state for purposes of the long arm statute.[5]

Cypress next argues that Tiber's correspondence and license negotiations with Cypress in Mississippi in the weeks prior to commencement of this lawsuit support a finding that Tiber was "doing business" in Mississippi and that it has the requisite "minimum contacts" with the state as would warrant the exercise of jurisdiction. Its argument, in this regard, refers to the facts that on February 6, 2007, Tiber's counsel wrote a letter to

---

[5] Cypress argues that in the event the court finds its evidence insufficient to make a prima facie showing of personal jurisdiction, it should be given the opportunity to conduct discovery concerning the nature and extent of Tiber's business activities in Mississippi, particularly since Tiber has "not [said], one way or the other, whether it has taken any steps in preparation for distribution in Mississippi." The court would agree that activities short of actual sales can amount to "doing business." <u>See</u> <u>Coats v. Penrod Drilling Corp.</u>, 5 F.3d 877, 882 (5th Cir. 1993) (stating that "the doing business prong 'is so broad that it belies any suggestion it be limited to commercial activity'") (citation omitted). But here, even if Tiber had taken "steps in preparation for distribution" of Endal in Mississippi, it is clear from Tiber's proof both that Tiber had taken no actions <u>in</u> <u>Mississippi</u> with the aim of future sales of Endal in this state, and that there had been no sales of Endal even outside of Mississippi before this suit was filed. Indeed, Tiber has specifically stated it had no sales force in place and that no sales of Endal had been made anywhere at the time this suit was filed.

Cypress advising of its ownership of the '689 patent, and seeking to initiate license discussions concerning the patent, and that during the next two weeks, Tiber's president proposed licensing terms and the parties had discussions about a possible license agreement. Cypress argues that this conduct evidences Tiber's "purposeful availment of the benefits of this district."

The Federal Circuit has held that "personal jurisdiction may not be exercised constitutionally when the defendant's contact with the forum state is limited to cease and desist letters, 'without more.'" Breckenridge, 444 F.3d at 1363 (citing Red Wing Shoe, 148 F.3d at 1360). In an effort to clarify the issue of what "more" will suffice to support jurisdiction, the court in Breckinridge surveyed a number of its prior cases, two of which are pertinent here, Hildebrand v. Steck Mfg. Co., Inc., 279 F.3d 1351, 1354 (Fed. Cir. 2002), and Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1360-1361 (Fed. Cir. 1998). Ultimately, the court concluded that a defendant "may not be subjected to personal jurisdiction if its only additional activities in the forum state (in addition to sending cease and desist letters) involve unsuccessful attempts to license the patent there." Breckenridge, 444 F.3d at 1366.

The Hildebrand case cited in Breckinridge involved a factual situation similar to that presented here. There, Hildebrand, a Colorado resident, filed a patent infringement suit against the

defendants, all Ohio corporations, in Colorado federal district court. One week earlier, one of the defendants had filed an action in Ohio district court for declaratory judgment of non-infringement, invalidity and tortious interference. The Colorado district court transferred its case to Ohio. The Ohio district court rejected a challenge to personal jurisdiction over Hildebrand, but the court of appeals reversed, observing that Hildebrand's contacts with Ohio consisted of sending three cease and desist letters to Ohio along with attempts to negotiate license agreements with two of the Ohio-based defendants. The court held that the exercise of personal jurisdiction over Hildebrand would be unconstitutional because "[a]ll of the contacts were for the purpose of warning against infringement or negotiating license agreements, and he lacked a binding obligation in the forum." Id. at 1356. In the court's opinion, this case is indistinguishable from Hildebrand.

Red Wing Shoe was also a declaratory judgment action for noninfringement, invalidity and unenforceability. There, as here, the nonresident defendant had sent the plaintiff Red Wing Shoe a series of letters alleging infringement and offering a non-exclusive license. Red Wing Shoe argued that the defendant's offers to license its patent to Red Wing amounted to a purposeful effort to negotiate business with a Minnesota resident, and contended that the letters sufficed to show minimum contacts. The

court held the letters were "not sufficient to satisfy the requirements of Due Process in declaratory judgment actions." Id. By way of explanation, the court stated that while there may have been at least some merit to the argument that cease-and-desist letters amounted to purposeful availment, the reason such letters do not suffice to create personal jurisdiction lies in the "fairness" prong of the due process inquiry, which asks whether the maintenance of personal jurisdiction would "comport with 'fair play and substantial justice.'" Id. (quoting Burger King, 471 U.S. at 476, 105 S. Ct. 2174). The court stated:

> [E]ven though cease-and-desist letters alone are often substantially related to the cause of action (thus providing minimum contacts), the "minimum requirements inherent in the concept of 'fair play and substantial justice' . . . defeat the reasonableness of jurisdiction." Id. at 477-78, 105 S. Ct. 2174. Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness. See Asahi, 480 U.S. at 121-22, 107 S. Ct. 1026 (Stevens, J., concurring in judgment).

The court explained that this is true even where a cease and desist letter includes an offer for a license, stating:

> [A]n offer for a license within a cease-and-desist letter does not somehow convert that letter into something more than it was already. Cf. Akro, 45 F.3d at 1548 (discussing such hybrid letters). An offer to license is more closely akin to an offer for settlement of a disputed claim rather than an arms-length negotiation in anticipation of a long-term continuing

> business relationship. See Burger King, 471 U.S. at 479, 105 S. Ct. 2174 (distinguishing between negotiations that come to fruition and create continuing obligations and those that do not). Treating such hybrid cease-and-desist letters differently would also be contrary to fair play and substantial justice by providing disincentives for the initiation of settlement negotiations.

Id. at 1366.

The court in Breckinridge directed that a court confronted with a challenge to personal jurisdiction in this context should "focus first on whether the defendant has had contact with the parties in the forum state beyond the sending of cease and desist letters or mere attempts to license the patent at issue there," for if not, there is no need for further inquiry. Breckinridge, 444 F.3d at 1366 (emphasis added). Cypress does not suggest that Tiber had contact with Mississippi beyond its letter of February 6 and contemporaneous and subsequent offer of a possible license and ensuing discussions, which did not culminate in any agreement. Consistent with Breckinridge, Red Wing and Hildebrand, an exercise of personal jurisdiction in these circumstances would be inconsistent with due process.

Based on the foregoing, the court concludes that it lacks personal jurisdiction over Tiber. However, rather than dismiss Cypress's complaint, it is ordered that Cypress's suit against Tiber shall be transferred to the Northern District of Georgia, along with Tiber's suit against Cypress, which was previously transferred to this court from Georgia.

SO ORDERED this 19th day of July, 2007.

/s/Tom S. Lee
UNITED STATES DISTRICT JUDGE